This next case is case number 4-14-0033. People v. Ronald Bramley. Appearing for the appellant is Attorney Janine Terrence. And for the appellee is Attorney Linda McClain. Good afternoon. Ms. Terrence, are you ready to proceed? Good afternoon. May it please the court. Mr. Bramley was convicted of aggravated battery following a jury trial. Because the trial court erred in failing to instruct the jury on his claim of self-defense, we ask this court to vacate his conviction and remand for a new trial. During the jury trial, evidence was presented revealing that Mr. Bramley and his wife were engaged in a loud verbal argument at a bus stop. When the bus arrived, Mr. Bramley's wife maneuvered around him, he was holding his arms outstretched along his sides, and she ran onto the bus and took a seat at the back of the bus. Mr. Bramley followed her onto the bus, and as he quickly walked toward his wife, a passenger on the bus, Ms. Link, stood up, raised her forearm, and placed her forearm and elbow against Mr. Bramley's chest, stopping his progress through the bus. He could not go around her. He asked her to release him. She refused. As he attempted to break her grip on him, he hit her in the face. At trial, the defense asked the trial court to instruct the jury on the claim of self-defense. The trial court, looking only to the testimony of the defendant, refused. Where there is some evidence, even slight evidence, in the record which, if believed by the jury, would support a defendant's claim of self-defense, the defendant is entitled to have the jury instructed on that theory. Here, there was, at a minimum, slight evidence offered on all six elements of self-defense to justify the trial court's giving that ruling or instruction to the jury. And I'm sure that you're going to touch on each of them. The one I had an interest in hearing from you on is the third element, which is the danger, the imminent danger of harm. What is the evidence of imminent danger of harm to your client posed by the victim in this case? Here, Ms. Link was a stranger to Mr. Brownlee. He's getting on the bus, and there is a stranger who suddenly attacks him. Attack in what way? She strikes him. She strikes him in the chest with her forearm and her elbow. Is that based on the video, or is that based on his testimony? It's based on the video and all of the evidence produced so far. Can you describe the strike that you're indicating is demonstrated in the video? The strike in the video, you can see just his movement clearly when her forearm is raised. There's a slight backward movement of his upper body as he makes contact, or she makes contact with him with his arm. It all happens in a matter of seconds, but it is clear that she struck him. She actually hit him with her forearm and her elbow. And there's no dispute about that in the record. So he had the striker in the face because he needed to prevent further harm being done? He accidentally struck her in the face as he was trying to remove himself from her grip. When she refused to let him go and he could not move, he pushed away from her. And in pushing away from her, he hit her in the face. In addition to there being at least slight evidence that there was the imminent danger of harm, where she refused to let him go and he was unaware of who this stranger was that had hit him, there was force that was threatened. It is undisputed that she struck him. She admits to striking him to stop his movement through the bus. Secondly, there was at least slight evidence that Mr. Bramley was not the aggressor in this incident with Ms. Link. It was Ms. Link who began that interaction with Mr. Bramley. But for her standing up and blocking his path and striking him, he would have had no conversation or interaction at all with Ms. Link. Further, there was at least slight evidence that Mr. Bramley reasonably believed that Ms. Link threatened force against him that was unlawful. She was just a passenger on the bus. She had no apparent authority to strike or seize him. And finally, there was at least slight evidence that Mr. Bramley actually and subjectively believed a danger existed that required the use of force applied, and his beliefs were objectively reasonable. Here you have a man who's middle-aged. He's disabled. He has no toes on his feet. All of the fingers on one hand are missing. The few that are on the other are fused. He was shorter or the same height as Ms. Link as they stood on the bus. She was youthful. She appeared bigger than he was in the videotape. You have him confronted by this woman who's an imposing figure that's commanding him to stop and preventing him from continuing on his way and refusing to let him go. He simply pushed away, and in pushing away from her, trying to release himself from her grip, he hit her in the face. There was, at a minimum, slight evidence to justify the giving of the self-defense instruction to the jury. Because the trial court failed to do so, we ask that this court vacate the conviction and remand for a new trial. Are there? Thank you. Ms. McVine? May it please the court? The state would argue that the trial court did not err in failing to give the self-defense instruction. To obtain a jury instruction on self-defense, a defendant must present some or slight evidence supporting each of six elements. In this case, if the state negates any one of the self-defense elements, the defendant's claim of self-defense should fail. In particular, the state is arguing that there was no evidence of Factor 2, 3, or 5. The second factor states that the defendant was not the aggressor. However, the defendant was the initial aggressor and the continuing aggressor. The defendant argued with his wife at the bus stop, aggressively trying to prevent her from getting on the bus by blocking her way with his arms and shoving her. And then he ran after his wife onto the bus. Case law holds that even the mere utterance of words may be enough to qualify one as an initial aggressor. And in this case, it was not necessary that the defendant be the aggressor toward Melinda when he was the aggressor in the overall situation. He never stopped being an aggressor. So the second factor, definitely, I believe that the second factor has not been shown by the defendant. The third factor states that the danger of harm is imminent. In this case, Melinda did not threaten force against the defendant and definitely not such that danger of harm was imminent. Taking the defendant's testimony, he thought that she had grabbed him because his momentum was stopped and testified that she raised her forearm and elbow, putting her elbow to his chest. Her touching was merely incidental and a product of her blocking his way. In addition, Melinda was holding a cup of coffee and a phone at the time of her encounter with the defendant. So clearly, she did not grab him. The state disagrees that the videotape shows that Melinda was stopping the defendant with such force that his upper body was forced backward. As for the fifth factor, that defendant actually and subjectively believed that danger existed. Clearly, the defendant never described that he in any way felt he was in danger or that danger existed or that he believed he was being attacked or that force was necessary to avert any danger. He did not testify that he was afraid. If you go through his testimony, his testimony is that he was trying to move Melinda out of the way. He testified he felt he had the right to make contact back. Therefore, he did not feel he was in danger. So the fifth factor is completely not proved or shown by the defendant. He testified he felt he had the right to make contact back, not that he felt he was in any danger or in jeopardy or threatened. He was retaliating. He was insulted or offended by Melinda's intrusion on what he believed to be his marital problem and his ability to pursue his wife. He was angry. And I cite three cases in my brief that support this. The Lockwood case of Fifth District from 1976. In that case, the evidence indicated that the defendant returned the blow not to prevent subsequent attack but in retaliation. In Bailey, a Second District 1982 case, the defendant testified that she scratched the officer when he grabbed her arm. The defendant did not indicate that she believed she was defending herself from excessive force. In Bratcher, the defendant testified he struck out in anger and surprise and has an automatic reaction to the officer's touch. The state maintains in particular those factors I think support our position and we ask the court to affirm the defendant's conviction. Thank you. Ms. Perkins, rebuttal. The standard is not whether the defendant actually proved that he was defending himself. The standard here is whether there was evidence, albeit slight evidence, that the defendant has a claim of self-defense. And here, there was some evidence. If there's doubtful credibility, if there's conflicting testimony, it doesn't matter. As long as there is slight evidence on each of those six elements, the defendant is entitled to those jury instructions. It's for the jury to decide. It's for the fact finder to decide whether or not he has an effective self-defense claim. But once he's presented sufficient evidence in the record that he's entitled to this claim of self-defense, he should have gotten self-defense instructions for the jury. Mr. Bramley did not have to testify that he was afraid. People v. Sims, a third district appellate case, has found that there is no need for the defendant to actually testify that he was afraid. You can look to the incident itself, and the incident that we have before us is a man getting on the bus. A stranger stopping him, striking him in the chest, and then refusing to let him go. His natural, instinctual response was to push away, to release himself, because she had refused to let him go. This was a matter of self-defense, and I ask this Court to vacate his conviction and remand him in the trial. Thank you, counsel. Thank you both. The case will be taken under advisement, and a written decision shall issue. The Court stands in recess.